OPINION
{¶ 1} Heather D. Braxton, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found appellant guilty of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322, which is a second-degree felony.
 {¶ 2} On October 13, 2002, appellant, who was 22 years old, was at her residence with several minor males and females, including Frankie Stiles, a 16-year-old female. Appellant and Stiles were neighbors and friends. Several of the female minors were to spend the night at appellant's house. The testimony was somewhat unclear, but it seems that several of the minors, including Stiles, left the house and then returned. When they returned, appellant's former boyfriend, Nate Morton, and his brother, Aaron Morton, were at the house.
 {¶ 3} On this evening, appellant testified that she had taken prescription Zoloft and imbibed Firewater, a potent alcoholic beverage. Nate told her that he had a drug that would make her feel calm and relaxed. Nate also told appellant that the drug, Ecstasy, would make her experience mesmerizing visual effects. He told her the visual effects could be triggered by video monitors, and those using the drug had enhanced fascination by seeing themselves on television. Nate, Aaron, and appellant all used Ecstasy. Stiles testified that she had been drinking alcohol on this night that had been provided by appellant. She further testified that either Aaron or appellant gave her two Ecstasy pills, and Aaron made her snort a crushed pill. Lab results later showed that Stiles had methamphetamine and Ecstasy in her system.
 {¶ 4} Apparently, at some point, Aaron went to appellant's bedroom and set up a video camera and fed it into a television. Appellant, Nate, and Aaron then met in appellant's bedroom. Although appellant testified that she did not know that a videotape had been placed in the camera or that the videotape was actually recording the bedroom activities, a video recording of the activities in the bedroom was created and played at trial. The videotape shows appellant, Nate, and Aaron engaging in various sexual activities and watching their activities on the television screen. At one point, Stiles enters the room off screen, and appellant and Nate look in her direction from the bed. It appears that appellant and Nate were not expecting Stiles to enter the room. After Stiles and appellant apparently leave the room for a short time, they return, and Stiles begins engaging in various sexual acts with appellant, Nate, and Aaron together and individually. There is little suggestion of overt coercion against Stiles apparent from the recording, and Stiles seems generally to be a willing participant, and even at times the aggressor. Stiles eventually stops engaging in the acts and, after more discussion, leaves the room. After Stiles exits, the remaining parties then again participate in further sexual acts.
 {¶ 5} After leaving appellant's house, Stiles returned home and reported to her parents that she had been forced to use drugs, had been raped, and had been videotaped being raped. The police were called to Stiles's home. Columbus Police Officer Timothy Mounts then interviewed appellant, Nate, and Aaron. At trial, there was conflicting evidence as to what appellant told the police during that interview.
 {¶ 6} On October 23, 2002, appellant was charged with one count of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322, which is a second-degree felony. A jury trial was commenced on March 15, 2004, and appellant was subsequently found guilty of the offense as charged. The trial court entered judgment on June 22, 2004, sentencing appellant to two years incarceration and classifying her as a sexually oriented offender. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
ASSIGNMENT OF ERROR I
Appellant's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
ASSIGNMENT OF ERROR II
Appellant's due process rights under the state and federal constitutions were violated when the trial court prevented cross examination of a state's witness regarding her motives to lie, in violation of Evidence Rule 404(B).
ASSIGNMENT OF ERROR III
The accused's due process rights are violated under Section 10, ArticleI of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, when the trial court abuses its discretion in giving Appellant a prison sentence without properly considering the factors set forth in Ohio Revised Code §§ 2929.11, 2929.12, and 2929.13(D), or by making incorrect determinations of fact in considering the same statutory factors.
 {¶ 7} Appellant argues in her first assignment of error that the jury's verdict was against the manifest weight of the evidence and based upon insufficient evidence. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 8} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v.Getsy (1998), 84 Ohio St.3d 180, 193-194; State v. Eley (1978),56 Ohio St.2d 169, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 9} R.C. 2907.322 provides, in pertinent part:
(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]
 {¶ 10} With regard to the "create, record, photograph, film, develop, reproduce, or publish" element, appellant's first argument is that she had no knowledge that a tape was being created, recorded, or filmed. Appellant asserts she believed the camera was being used only to produce an image directly onto the television screen. The state counters that R.C. 2907.322 is a strict liability statute in that it requires no knowledge that the offender is creating, recording, or filming the material. However, even assuming, without deciding, that R.C. 2907.322
required appellant to have knowledge that the tape recording was being produced, we find there was substantial evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that appellant knew the activities were being recorded to tape. Officer Mounts testified that appellant asked him whether it was illegal to tape a minor having sex. Although appellant claims she only asked Officer Mounts whether having sex with a minor was illegal, the jury was in the best position to view the evidence and could have found the testimony of the officer more credible. Even more conclusive evidence that appellant knew a tape was being created of the activities comes from appellant herself. At the end of the recording, when appellant and Nate are discussing their relationship, appellant can clearly be heard saying "we should stop the tape." Accordingly, we find that it was not against the manifest weight of the evidence for the jury to find that appellant knew that the activities were being recorded onto tape, and such was based upon sufficient evidence.
 {¶ 11} Appellant next contends that there was no evidence that she was the actual person who created, recorded, or filmed the minor participating in sexual activity. "Create," "record," and "film" are not defined by R.C. 2907.01. However, "create" is defined by Black's Law Dictionary as "[t]o bring into being; to cause to exist[.]" Black's Law Dictionary (6 Ed. 1990) 366. Webster's Ninth New Collegiate Dictionary (1987) 984, defines "record" as "to cause (as sound, visual images, or data) to be registered on something (as a disc or magnetic tape) in reproducible form[.]" Webster's Dictionary defines "film" as "to make a motion picture of or from[.]" Id. at 463. Appellant argues that, because there was no evidence beyond a reasonable doubt that she was the one who set up the camera or pushed the record button to record the particular sexual activities involving Stiles, she did not "create," "record," or "film" the material. Appellant concedes that she can be seen setting up and adjusting the camera to focus on the bed at the commencement of the recording; however, she asserts that there is then a break in the tape when the recording stops and then resumes, sometime after which the activity with Stiles eventually occurs. Appellant claims that she could not have started the recording this subsequent time because she is seen on the bed with Nate when the tape starts again.
 {¶ 12} We disagree with appellant's arguments. A careful review of the tape demonstrates that the camera is never moved again from its position after appellant adjusts it numerous times and focuses it onto the bed at the very beginning of the recording. After the break in the tape, the camera perspective does not change. Accordingly, appellant was, in fact, the person responsible for setting the camera in the position that eventually captured the activity with Stiles and, thus, created, recorded, and filmed the material. Also, contrary to appellant's contention, she was not on the bed with Nate after the recording commenced the second time. In fact, when the recording starts the second time, there is no one on camera. Although it cannot be determined who actually pushed the record button on the camera after the initial break because no one can be seen on camera, it is clear from the audio that appellant was standing very near the camera microphone at this point because her voice is the first one heard after restarting the tape and sounds excessively loud and distorted. It is also apparent that appellant knew how to operate the camera because she started the initial recording herself, as evidenced by the fact that, at the commencement of the initial recording, she was standing in front of the camera while Nate and Aaron can be seen in the background. Further, after the tape is commenced the second time, Nate can be heard right after appellant saying repeatedly, "we're rolling, we're rolling." Although Nate's words might suggest that he was the person who pushed the record button the second time, regardless, this would demonstrate, at a minimum, that appellant was aware an actual tape recording had commenced, and a tape was being created based upon her original positioning of the camera. We find her participation to this extent and in these ways was sufficient to fall within the definitions of "create," "record," and "film," in that appellant's actions caused the material including Stiles to exist, to be registered, or to be made.
 {¶ 13} We also find that appellant created the tape knowing that the character of the tape included the sexual performance of a minor, as required by R.C. 2907.322. Although appellant argues that she could not have created the tape with prior knowledge that a minor would be involved because she was surprised by Stiles's entrance into the room, at the moment Stiles began participating in the sexual activities, appellant formed the requisite knowledge "of the character of the material or performance involved." R.C. 2907.33 does not indicate or limit when the actor must form knowledge of the character of the material. In addition, despite appellant's contention that there was no evidence that she consented to the creation of the tape at the time Stiles was participating, given her knowledge that a tape recording was being made and her failure to take any actions to stop the activities or the recording from continuing, such was sufficient to demonstrate beyond a reasonable doubt that she consented to the minor's participation in the video recording.
 {¶ 14} We also note that, although the parties concentrate their arguments on whether appellant knew the activities were being recorded onto a tape, the definition of "material," as used in R.C. 2907.322, is very broad, and includes any "image * * * appearing on a * * * television screen[.]" R.C. 2907.01(J). It is abundantly clear from the record that appellant knew the image of Stiles engaging in sexual activity was appearing on the television screen, as she can be seen looking toward the television throughout the events. Thus, appellant's actions in positioning the camera to display the activities on the bed involving the minor "created" an image that appeared on the television screen. In such a case, it is irrelevant whether appellant pushed the record button, as it was sufficient for purposes of R.C. 2907.322 that she actively participated in causing the image of the minor to appear on the screen.
 {¶ 15} For these reasons, we find the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of R.C. 2907.322 were established beyond a reasonable doubt. The current circumstances do not present a case in which the jury clearly lost its way so that a new trial must be ordered. In addition, because the trial court's verdict was not against the manifest weight of the evidence, it necessarily was based upon sufficient evidence. SeeLakewood v. Dorton, Cuyahoga App. No. 81043, 2003-Ohio-1719, at ¶ 32, citing State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462 (because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency; thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency). Therefore, appellant's first assignment of error is overruled.
 {¶ 16} Appellant argues in her second assignment of error that her due process rights were violated when the trial court prevented her from cross-examining Stiles regarding her motives to lie. At trial, the defense sought to elicit from Stiles that, on the night in question, she had been under a curfew and electronic monitoring imposed by the juvenile court. Appellant asserts that the fact that Stiles was subject to a curfew would show her motive to concoct her version of the night's events and lie about appellant giving her drugs and alcohol, and such is permissible under Evid.R. 404(B).
 {¶ 17} Generally, cross-examination is permitted on all relevant matters and matters affecting credibility. Evid.R. 611(B). However, the right to cross-examination is not absolute, and the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." State v. Lukens (1990),66 Ohio App.3d 794, 801. Whether an abuse of discretion has occurred depends on the "general factual posture" of the case and whether "the complaining party was denied a fair trial." State v. Cobb (1991),81 Ohio App.3d 179, 184.
 {¶ 18} Evid.R. 609(D) and R.C. 2151.358(H) clearly exclude the use of a juvenile court adjudication, regarding a juvenile's conduct, for purposes of general impeachment of a witness's credibility. There are some circumstances, however, when a witness's juvenile record might be used. Specifically, a juvenile record may be subject to cross-examination in the case where the defendant has the particular purpose of demonstrating the potential bias of a witness. Davis v. Alaska (1974), 415 U.S. 308, 321,94 S.Ct. 1105. In Ohio, Davis has been applied to allow cross-examination of a witness with his or her juvenile records where the defense presents "some plausible showing" that the records would be used for the specific purpose of showing a witness's potential bias and not merely to discredit the general character of the witness. State v. Pirman (1994),94 Ohio App.3d 203, 210; Lukens, supra, at 802-803.
 {¶ 19} In the present case, appellant's cited reasons for wanting to question Stiles on her juvenile adjudications were not for the specific purpose of bias against appellant. Rather, appellant's reasons were to demonstrate her general motive to lie. As admitted by appellant, this would be evidence falling under Evid.R. 404(B), which permits the use of evidence of the accused's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or any other relevant purpose. However, "other acts" evidence cannot be considered a proper purpose for the use of a juvenile record because it does not show bias. State v. Winston, Cuyahoga App. No. 81436, 2003-Ohio-653, at ¶ 12. The term "bias" generally refers to a predisposition of opinion that prevents impartiality. Id. In the present case, appellant failed to demonstrate some plausible showing that the introduction of Stiles's juvenile court matters would have been anything more than a general attack on her credibility and character for truthfulness. Therefore, because appellant's desired cross-examination pertaining to Stiles's juvenile record was not for the purpose of showing bias, it was prohibited.
 {¶ 20} In addition, even if the trial court had improperly precluded appellant's cross-examination of Stiles on her juvenile record, any error would have been harmless. This court held in Lukens, that the harmless error standard applies to cases involving a trial court's preclusion of cross-examination concerning prior juvenile proceedings. Lukens, supra, at 805. In the present case, the fact that Stiles was under electronic monitoring from the juvenile court and was out past her court-imposed curfew was irrelevant to appellant's defense. Whether Stiles lied about appellant giving her drugs or alcohol was unrelated to the legal issues involved in determining whether appellant violated R.C. 2907.322. Our analysis under appellant's first assignment of error above was not dependent upon any testimony of Stiles. The videotape speaks for itself and provided all the necessary evidence to convict appellant under R.C.2907.322.
 {¶ 21} We note that appellant also presents an undeveloped argument that evidence of Stiles's motive to lie would have also supported her defense that she did not know she was being taped and did not expect Stiles to enter the bedroom. However, whether appellant expected Stiles to enter the bedroom is irrelevant to the elements of R.C. 2907.322. Further, the only testimony of Stiles that this court can discern that may be construed as relating to appellant's knowledge of the taping was Stiles's very contradictory, vague, and confusing allegation that there had been a prior taped sexual episode between her and Aaron that same evening, during which she claimed to have seen appellant carrying a second video camera in the bedroom. However, notwithstanding the inconsistent and ambiguous nature of this allegation, Stiles's testimony clearly did not allege that appellant was using the video camera to tape the prior sexual episode, which we agree would have tended to demonstrate that appellant knew the events in question were also being recorded to tape. Thus, we fail to see how the veracity of Stiles's testimony would have affected our determination as to appellant's knowledge of the videotaping. Therefore, we find any potential error as to the limitation on cross-examination in the instant case to be harmless. For these reasons, appellant's second assignment of error is overruled.
 {¶ 22} Appellant argues in her third assignment of error that her due process rights were violated when the trial court sentenced her to prison without properly considering the factors in R.C. 2929.11, 2929.12, and2929.13(D), and by making incorrect determinations of fact in considering the same statutory factors. Felony sentences are no longer reviewed under the abuse of discretion standard. State v. Price, Franklin App. No. 03AP-459, 2004-Ohio-1223, at ¶ 14; R.C. 2953.08(G)(2) ("[t]he appellate court's standard for review is not whether the sentencing court abused its discretion"). The R.C. 2953.08(G)(2) standard of review is less deferential than the abuse of discretion standard. Price, supra. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or otherwise modify a sentence, or may vacate the sentence and remand the matter for resentencing if it clearly and convincingly finds either that the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(E)(4), or 2929.20(H), or the sentence is otherwise contrary to law.
 {¶ 23} Appellant's violation of R.C. 2907.322 was a second-degree felony. R.C. 2929.13(D) provides that, for a second-degree felony, it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under R.C. 2929.11. R.C. 2929.13(D) provides that the sentencing court may repute the presumption and impose community control sanctions instead of a prison term if the court makes both of the following findings:
(1) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12
of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.
(2) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.
 {¶ 24} In the present case, the trial court found that the factors indicating that recidivism is unlikely outweighed the factors indicating that recidivism is likely. In considering the factors with regard to whether appellant's conduct was more serious than conduct normally constituting the offense, the trial court focused upon whether the victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense, pursuant to R.C. 2929.12(B)(2). In that regard, the trial court found that it was "unavoidable" that Stiles experienced psychological harm of a very serious nature. It found that, although Stiles had very serious personal issues that appellant was not responsible for creating, it was clear that the victim was experiencing severe emotional suffering.
 {¶ 25} Appellant argues that, contrary to the trial court's conclusion, there was no evidence that Stiles was experiencing severe emotional suffering or that serious psychological harm was "unavoidable." Appellant asserts that the only emotional suffering Stiles experienced was the result of being caught out after curfew, being high on drugs, consuming alcohol, and knowing she would have to face her parents and the juvenile court system. Appellant maintains that Stiles's regret for voluntarily engaging in sex acts does not qualify as severe emotional suffering caused by appellant. Appellant further contends that the crime was the creation of a videotape, and there was no evidence that the creation of the videotape itself caused any severe emotional suffering pursuant to R.C. 2929.12(B)(2). Also, appellant points out that Stiles's mother was in the courtroom for her testimony, and her emotional courtroom demeanor was attributable to that circumstance.
 {¶ 26} We find the record supports the trial court's findings, and the sentence was not contrary to law. In determining whether Stiles suffered serious psychological harm as a result of the offense, the trial court considered the nature of the crime and its personal observation of Stiles's demeanor and emotional state while testifying in court. It is difficult to determine from the record alone, but the transcript of the trial suggests that Stiles was suffering emotional distress upon watching the videotape of the night's events. Although appellant contends these were "antics," the trial court was in the best position to view Stiles and scrutinize her demeanor, voice, and body language, and determine her sincerity. Seasons Coal Co., supra. Further, despite appellant's claims that the actual crime of creating the videotape could not have caused the emotional distress, we disagree. Although it does appear Stiles was engaging in the activity voluntarily, and was even the aggressor at times, the actual crime — the memorialization of a minor's sexual activities on videotape for posterity — could certainly be the impetus for severe emotional suffering. It was within the realm of knowledge and experience of the trial court to make such a determination without the testimony of an expert. Therefore, we find the trial court properly considered the factors and made the appropriate findings in concluding that the present circumstances did not constitute ones under which deviation from the statutory presumption of incarceration was appropriate.
 {¶ 27} Appellant also argues that the trial court failed to consider the factors in R.C. 2929.12(C), specifically, that Stiles induced the offense, appellant acted with strong provocation, appellant did not cause physical harm, and there were substantial grounds to mitigate appellant's conduct. However, in making the mandatory determinations, pursuant to R.C. 2929.12, the trial court is not required to use specific language or make specific findings on the record. State v. Arnett (2000),88 Ohio St.3d 208, 215; State v. Legg, Franklin App. No. 04AP-258, 2005-Ohio-581, at ¶ 10, citing Arnett, supra. That the court considered R.C. 2929.12 may be derived from the record of the sentencing hearing and/or the judgment entry imposing sentence. State v. Fisher, Lake App. No. 2002-L-020, 2003-Ohio-3499, at ¶ 11; see, also, Legg, supra, at ¶ 12. Further, a rote recitation by the trial court that it has considered applicable factors under R.C. 2929.12 is sufficient for the trial court to satisfy its duty. State v. Holmes, 159 Ohio App.3d 501, 2005-Ohio-52, at ¶ 23, citing Arnett, supra; Legg, supra, at ¶ 10, citing Arnett,
supra. In the present case, the trial court indicated in the sentencing judgment entry that it had considered the factors set forth in R.C.2929.12. For these reasons, we cannot say that the trial court erred in imposing the prison term upon appellant. Therefore, appellant's third assignment of error is overruled.
 {¶ 28} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus and French, JJ., concur.