[Cite as *State v. Dearth*, 2025-Ohio-4879.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 2025-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 24 CRB 00125 |
| | : | (Criminal Appeal from Municipal Court) |
| KEIRSTEN M. DEARTH | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 24, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

LEWIS, J., and HANSEMAN, J., concur.

OPINION

JAY A. ADAMS, Attorney for Appellant
DANIELLE E. SOLLARS, Attorney for Appellee

TUCKER, J.

{¶ 1} Defendant-appellant Keirsten M. Dearth appeals from her conviction for assault. For the reasons set forth below, we affirm.

## I.      Factual and Procedural History

{¶ 2} This case arises from a fight that occurred in Kelley's Café, a bar in Jamestown, Ohio.   On January 28, 2024, a fight broke out between two patrons.   Numerous other patrons became involved as the fight expanded.   K.S., a bartender who was working that night, was injured during the melee.

{¶ 3} Following an investigation, Dearth was charged with one count of misdemeanor assault against K.S. in violation of R.C. 2903.13(A) and one count of disorderly conduct. The matter proceeded to a bench trial.

{¶ 4} The State introduced a video recording of the melee.   The video depicts three encounters between Dearth and K.S. during the brawl.   At the start of the video, Dearth and a female friend, along with two men, can be observed standing beside the bar conversing with each other.   A woman approached the group and began a physical fight with Dearth's female friend.   Dearth stepped in between the two women with her back to the instigator. K.S. then approached and attempted to pull the instigator away from Dearth and her friend. While doing so, K.S. had one hand on Dearth's back.   At that point, Dearth turned away from her friend, and Dearth and K.S. shoved each other.   The fight continued for a moment before everyone pulled away.

{¶ 5} There was a momentary lull in the fight before a man approached and punched another man. Numerous bar patrons then became involved in the fight. At that point, K.S. can be observed standing by the bar while several women were fighting in front of her. Dearth approached the group and then put her hands on K.S.'s face while pushing K.S. into the bar. The video shows that K.S. began pulling Dearth's hair. When the women disengaged, Dearth walked across the space toward the exit.

{¶ 6} And then another woman grabbed K.S. by the hair and pulled her until she was bent at the waist and forced to walk toward the middle of the room. Two men and another woman then surrounded K.S. and the woman continued pulling K.S.'s hair. As K.S. remained bent due to the hairpulling, Dearth approached the group, reached into the middle of the group and grabbed and yanked K.S.'s hair. The melee then stopped as quickly as it had begun.

{¶ 7} K.S. testified at trial regarding the second encounter between her and Dearth. She testified that she did not pull Dearth's hair until after Dearth grabbed her by the face. K.S. also testified that Dearth had her fingers in her mouth and in her eyes. According to K.S.'s testimony, she bit one of Dearth's fingers.

{¶ 8} Dearth testified that she did not place her hands on K.S.'s face until after K.S. began pulling her (Dearth's) hair. Dearth further testified that she was not bitten.

{¶ 9} The court found Dearth guilty of assault but dismissed the charge of disorderly conduct. The court sentenced Dearth to 180 days in jail suspended on the condition that she commit no "similar violations of law in the next five years[.]" Sentencing Tr. at 9. The court also imposed a fine of $250 and ordered Dearth to complete an anger management course.

{¶ 10} Dearth appeals.

## II. Manifest Weight and Sufficiency of the Evidence

{¶ 11} Dearth asserts the following for her first and second assignments of error:

THE VERDICT OF THE TRIAL COURT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

THE VERDICT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Dearth contends the State failed to present sufficient evidence to support her conviction for assault. She also contends the conviction was against the manifest weight of the evidence.

{¶ 13} "'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*

{¶ 14} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A case should not be reversed as being against the manifest weight

4

of the evidence except "'in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶ 15} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). *Accord State v. Winbush*, 2017-Ohio-696, ¶ 58 (2d Dist.). "As a result, 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" (Citations omitted.) *State v. Farra*, 2022-Ohio-1421, ¶ 51 (2d Dist.), quoting *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.).

{¶ 16} Dearth was convicted of the offense of assault which is proscribed by R.C. 2903.13. That statute states, "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." R.C. 2903.13(A).

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B). The term "physical harm" is defined to mean "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

5

{¶ 17} In support of her argument, Dearth focuses upon her second encounter with K.S. Dearth claims that the act of grabbing K.S. by the face and shoving her into the bar was done solely in reaction to having her hair pulled by K.S. She asserts she did not intend to harm K.S. and that her actions were merely an instinctual defensive response to being attacked. Thus, she claims the State failed to demonstrate evidence sufficient to prove she acted knowingly and further failed to disprove her claim of self-defense. Dearth also claims K.S.'s testimony is not credible because there is no evidence to support K.S.'s claim that she bit Dearth's finger.

{¶ 18} This argument ignores the fact that the trial court noted that Dearth pulled K.S.'s hair. This is consistent with the portion of the video depicting the third encounter between the women. The video shows that, after the women disengaged with each other at the bar, Dearth walked away toward the exit. At that point, a woman grabbed K.S. by the hair and pulled her downward and toward the exit. K.S., who was bent over at the waist, was then surrounded by two men and two women. While her hair was still being pulled, Dearth walked over to the group, reached toward K.S.'s head, entwined her hand into the top part of K.S.'s hair, and yanked K.S.'s head. This action, which clearly was engaged in knowingly, cannot in any way be construed as self-defense or defense of others. And this action is sufficient to constitute an attempt to cause physical harm to another.

{¶ 19} From the record before us, the trial court had a reasonable basis for finding Dearth guilty of assault. Thus, the conviction was not against the manifest weight of the evidence and, as such, it was also supported by sufficient evidence. Accordingly, the first and second assignments of error are overruled.

### III.    Conclusion

{¶ 20} Both assignments of error being overruled, the judgment of the Xenia Municipal Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J., and HANSEMAN, J., concur.